O'Gorman, Inc.
        vs.                    Eq. No. 7503
Dexter Realty Company

May 26, 1928

BAKER, J. This bill is brought by the complainant, as assignee and lessee of certain leases made to Mr. O'Gorman and itself by the respondent, against the latter for the purpose of having the Court fix the fair rental of certain property known as the O'Gorman Store, located on the north side of Main Street in the City of Pawtucket at what is known as Main Street Square. The ground for relief alleged in the bill is to prevent a forfeiture and irreparable damage to the complainant. The respondent in substance has joined in the prayer of the bill.

. It appears that the respondent leased to Mr. O'Gorman, under date of July 1, 1915, all of the premises involved in this proceeding, except a portion of the second floor, for a period of 5 years for the sum of $7600 per annum and for a further period of 5 years at a yearly rental of $8900. A supplemental lease was made by the parties in January, 1924, in which the complainant obtained possession of the portion of the second floor of the building not covered by the first lease, at an annual rent fixed at $3,000. The leases together provided that the lessee should have the right to renew the leases for a further period of 10 years from November 1, 1925, provided that the minimum yearly rent for the entire building should be not less than $14,000 for the first 5 years and not less than $16,000 for the second 5 years. The original lease provided that if the parties should be unable to agree as to what should be the rental for this renewal period of 10 years, then three adjustors should fix said rental by a unanimous finding. It appears that the parties were unable to agree as to what the rental for said 10 year period from November 1, 1925, should be, and that three adjustors were ap-

pointed to fix said rental; but that they were unable to agree unanimously and that, therefore, this bill was brought in order to have the Court determine what the fair rental of the premises in question should be for the two 5-year periods from November 1, 1925, to November 1, 1935.

The Court, in order to obtain assistance in determining the above question, took a view of the leased premises and also of several other stores in the immediate neighborhood of the O'Gorman Store, and of the said locality in general.

The oral testimony presented was given chiefly by real estate experts who were familiar with conditions in Pawtucket and who had had experience in renting and selling business properties in the area involved. The Court feels that the evidence of these witnesses should be scrutinized with great care in order to determine its credibility and reliability. Sometimes the testimony of such witnesses is unconsciously partisan by reason of self-interest, friendship or employment by one side or the other.

The complainant contends that owing to circumstances existing since November, 1925, the fair rental value of the property involved is actually less than the minimum figures mentioned in the leases. It calls attention in this connection to general business depression existing in Pawtucket and particularly the closing of D. Goff and Sons' plant near the store, also to the re-routing of the street cars and the general tendency of the retail business section of the city to move westward away from the complainant's location, and to the general character of the property surrounding the complainant's store, which has an adverse effect on the retail trade. The complainant also urges that rentals of other properties in the vicinity of Main Street Square are declining.

On the other hand, the respondent

denies the claims put forth by the complainant and says that the population of Pawtucket is increasing, that many buildings in the neighborhood of Main Street Square have been renovated and improved, that rental values on Main Street are steadily advancing, that this property has become much more valuable since 1925, and that a fair rental is considerably in excess of the minimum figures mentioned in the leases.

The experts placed on the witness stand on behalf of the complainant set a fair rental value of the store in question for the first 5-year period from November 1, 1925, to November 1, 1930, at figures varying from $10,000 to $14,000 per year. Some of them then stated that for the second 5-year period their figures would be approximately the same. Others stated that they would be slightly less owing to their belief that values were declining in the vicinity of Main Street Square. A well qualified group of witnesses presented by the respondent, on the other hand, gave evidence that in their opinion for the first 5-year period a fair annual rent would vary from $22,000 to $26,000, and for the second 5-year period approximately an additional ten per cent. should be added.

The evidence shows that the building in question is of three floors and a basement. The areas are as follows: basement, 4300 square feet; ground floor, 4903 square feet; second floor, 4,801 square feet; third floor, 1,800 square feet. The building stands on the north side of Main Street in Pawtucket, opposite the entrance of East Avenue and near the corner of High Street. It is on the corner of Meeting Street, which is, however, a very small narrow thoroughfare leading sharply upgrade from Main Street. The building has light all along the side fronting Meeting Street and has a corner entrance and a stairway leading from said street to the second floor. The ground floor is high and light with very few posts. The basement is also well constructed and the first floor and basement together are admirably suited for retail merchandising. At the present time the front portion of the second floor is not used. The rear part is used for an office. The third floor is part of an old building and is used only for storage and is not very easily accessible. There is no elevator in the building. The complainant has leased the space at the corner of Main Street and Meeting Street, near where the stairs go to the second floor, for the purposes of a fruit stand, which to some extent blocks one entrance to the store. Under the terms of the lease of July 1, 1915, the respondent pays the taxes, insurance, ordinary repairs, and also for the heating of the property.

It is admitted by practically all the witnesses that the location of a store in connection with the volume of pedestrian traffic is one of the most important elements in fixing a fair rental value for a store engaged in retail merchandising such as the complainant is operating. In this connection, therefore, it becomes essential for the Court to consider the location of the premises in question. The complainant urges very seriously that the building it is occupying is disadvantageously situated for the type of business it is engaged in. It says, first, that what is known as the 100 per cent. business district of Pawtucket lies immediately to the westward, and also that the growth of the city is westward in the direction of Trinity Square and Broad Street. It also claims that the amount of pedestrian traffic on the south side of Main Street is considerably in excess of that on the north side; also that the larger stores, which advertise extensively and which are engaged in a similar line of business to the complainant's store, are grouped to the west of the premises occupied by the complainant and nearer Trinity Square. The complainant also urges that most of the stores in the vicinity of its store are small specialty stores

for men, such as cigar stores, restaurants, hat stores, and the like, and that across the street are two banks which are a hindrance to retail business. Witnesses placed on the stand by the complainant testified that in their judgment what might be called the 100 per cent. business district of Pawtucket extended from Trinity Square to Kresge's store, which is a short distance west of the premises in question. On the other hand, the respondent's experts testified that in their judgment this district extended to Main Street Square, and included the complainant's store. They also stated that this distance from Main Street Square to Trinity Square was so short, namely, being only about 600 feet, that people shopping and trading were bound to circulate more or less through the entire district and that it was impossible to draw any such arbitrary line as the complainant's witnesses set. Further, the respondent's witnesses stated that the physical contour and region about Main Street tends to hold business and to hold property values, because the business district can not well spread toward the north and south. They also called the Court's attention to the fact that several buildings lying to the east of the complainant's store and near the bridge have recently been renovated and improved, noticeably the Dorrance Building and several others, and that these buildings contain many retail stores; also that there are two theatres in the immediate vicinity of Main Street Square.

A consideration and weighing of the claims put forward by the respective parties in connection with the location of this store for retail merchandising leads the Court to the conclusion that it is well located for the purposes for which it is now being used. The Court is of the opinion that the so-called 100 per cent. business district can properly be considered to extend from Main Street Square to Trinity Square and will undoubtedly so remain for some

years to come. Pawtucket is a growing city; the business district is comparatively small and it seems to the Court that people will continue to move in large numbers through the limits indicated. The Court is inclined to believe that on the whole there is, perhaps, somewhat more pedestrian traffic on the south side of Main Street than on the north side, although it doubts whether there is as much difference as the counts taken by the complainant's witnesses would indicate, because in connection with at least one of those counts considerable doubt is cast upon its accuracy. The Court is inclined to think that the count taken by Mr. Martin, one of the respondent's witnesses, more nearly shows the true situation. Unquestionably the center of business activity in Pawtucket in the retail district is in the neighborhood of Woolworth's store on the south side of Main Street and slightly west of the location in question, and for that reason it may be that rents in that general neighborhood slightly nearer Trinity Square than the complainant's store might properly be relatively higher, but the Court does not believe that there is any such tremendous difference as the complainant and its witnesses would make claim for. The evidence shows clearly that the population of Pawtucket is constantly growing, perhaps not quite as rapidly now as a few years ago, but still increasing substantially. This being so, it would seem that there would be a relative increase in values in this somewhat small and congested business district. There is a tendency for retail business to push out towards the west beyond Trinity Square. That seems to be the natural growth, as there can be little or none toward the north and south, but the Court is of the opinion that this growth will be gradual, that it will be natural, that it will not, certainly in the immediate future, detract perceptibly from the values of property in the vicinity of

Main street square, and that this district will still continue to be for some time an active business district.

As a matter of fact, the portion of Main street between Main Street Square and the bridge contains many small retail stores for which substantial rents are obtained.

In connection with what the complainant claims in regard to the location of its store, it also urges as further reasons for lessened values and reduced rents in the Main Street Square area the fact of general business depression and the re-routing of the street cars. It can not be questioned, of course, that for several years there has been more or less depression in the textile industry and undoubtedly general business conditions in Pawtucket have been affected to some extent by this. Fortunately, however, Pawtucket and the district around about from which it draws business are not dependent entirely on that industry. Probably no portion of the state contains more diversified industries than Pawtucket and its general neighborhood Further, considerably testimony was introduced showing that many new industries have taken the place of those which have closed or left. The complainant referred in particular to the closing of D. Goff & Sons and the Dexter Yarn Company as being especially injurious to its business, because these plants were located only a short distance to the east of its store. In answer to this claim, however, the respondent produced testimony which tended to show that these mills are now being occupied by a group of small concerns and that, as a matter of fact, the number of employees is nearly equal to the number employed by the plants which have closed, and that it is only a question of a short time when space in those mills will be entirely occupied. Very possibly the proportion of women workers was larger under the old arrangement, but

the Court is reasonably satisified, after considering the evidence, that this matter can not be very seriously urged by the complainant as affecting in any very great degree its location or the rental value thereof.

The re-routing of the cars presents a somewhat more serious problem. Apparently in the summer of 1925 cars bringing passengers from the north and the northwest districts were made to loop at Trinity Square and have not since come down Main Street as far as the complainant's store. Cars from Providence, from East Providence, from the Attleboros and from certain sections of Pawtucket lying to the east and northeast of the complainant's store do bring their passengers to Main Street Square. It has been estimated that perhaps 60% of travel now comes into Trinity Square. This change in the operation of the cars, according to the evidence, was made to relieve congestion on Main Street. It may well be, therefore, that there is an increase of automobile traffic on Main Street to the benefit of the complainant's location above what existed before the cars were re-routed. Further, the complainant's store is only about 600 feet easterly of the place where the cars from the north loop, and it seems to the Court this distance is so short and there are so many stores of importance situated between Trinity Square and the complainant's store that it is reasonable to suppose that a very fair amount of this street car traffic reaches down as far as Main Street Square. There is no question but what this matter should be given serious consideration in the fixing of the complainant's rent. At the same time it should be noted that complainant saw fit to exercise its option to renew its leases at a time after it was clear that the depression referred to in the textile industry and the closing of the mills near its store either had or was about to take place. Further, the

complainant has not shown by the production of any definite figures that its sales have fallen off or that its profits have been reduced during the last three or four years since the conditions of which it is now complaining have existed. It should also be noted that very recently two so-called chain stores, namely, Kresge's Store and the Sarnoff-Irving Hat Store, have located near the complainant's property. It is well known that these stores are careful in selecting locations and it would seem a fair argument that the re-routing of the cars and the general business depression, so-called, as urged by the complainant, was not considered of serious moment by these two tenants.

Bearing in mind the claims of the respective parties relating to the location of the complainant's store, the nature of the store itself, the general trend of business in Pawtucket, the re-routing of the cars and the other matters referred to, and the conclusions of the Court in connection therewith, the question then presented is: what basis should be used as the means of figuring the fair rental of the premises involved? The evidence would tend to show that about 10 per cent. gross return on the value of the land and building is fair and reasonable. Various figures have been given by the experts as to the value of the premises in question, but the difficulty about using these figures to assist the Court in fixing the rent is that, from the weight of the testimony, the value depends very largely on the return.

Both parties, and in particular the respondent, have called the Court's attention to the rents obtained from other stores located in the general neighborhood of the complainant's store. Some of these stores are large and some are small. The respondent has in many instances worked the rentals out on a per square foot basis. There is no question in the Court's mind

but what these figures can be of considerable assistance to the Court, although of course they are not in any way conclusive. They tend to show the supply and demand in that district of Pawtucket for stores and what can be obtained for them in the way of rents. It should be noted that as the business district of the City of Pawtucket is so small, there apparently is considerable demand for stores such as the one occupied by the complainant which is suitable for occupation by the larger chain stores, so-called, such as Newberry's or Grants, which it is understood have been seeking locations in the business center of Pawtucket. The Court doubts whether the rents of very small stores, and particularly the small specialty stores, so-called, can help the Court much. As a general proposition it is clear that the small store yields per square foot much larger rental than the big store. This was illustrated by the respondent's witness, Mr. Webb, in his explanation of what he called the Hoffman-Neill rule of fixing rentals. Also it is clear that the chain stores frequently pay very large rents in order to obtain the location they desire. In addition it is evident from Mr. Sheldon's testimony that the Taylor interests in Pawtucket find themselves in a very fortunate situation and are obtaining large rents for their properties. The complainant calls the Court's attention to the rents of certain stores on North Main Street, East Avenue and High Street. While these figures can perhaps be of some assistance, the Court is of the opinion that as none of these are on Main Street, and some of them not very near Main Street, they can not serve as a very reliable guide for the fixing of the rent in the case at bar.

Certain of the larger stores were called to the Court's attention. The rent of the Kresge Store on the south side of Main Street slightly west of the complainant's location, the ground

floor of this store being somewhat larger than the complainant's but the basement being for storage purposes only, and there being no second or third floor, is $25,000 per year. This is a chain store and is located in probably the heart of the business district of Pawtucket. Its location is undoubtedly somewhat better than the complainant's. There can be no question but what the rent of the Woolworth Store, which is near Kresge's, is low, although in that instance the rent is net to the lessor and the lessee pays all the expenses of every kind. Najarian's store is, in the judgment of the Court, both as to size and location, quite similar to the complainant's store. It pays a rent of $18,000. The ground floor of this store is a trifle smaller than the complainant's store and it also has a commercial basement which is considerably smaller than the complainant's. Further, Najarian's has no second or third floor. It has, however, an entrance on two streets, which is of importance. In the judgment of the Court, it is located about as far west of the center of the Pawtucket business district as complainant's store is east. Shartenberg's store on Main Street has six floors, which makes it difficult to compare it with the store under discussion. The figure of $40,000 was mentioned as the rent, although this did not seem to be definite. In the opinion of the Court, Carpenter's furniture store on North Main Street can not in any way, by reason of location, be compared with the premises in dispute. The Mohican Market is on East Avenue, a short distance from Main Street. The rent here is apparently $10,000 per year and the taxes for a ground floor considerably larger than the complainant's. The Public Market on Broad Street some little distance west of the business center pays $12,000 per annum for a street floor about the size of the complainant's. The rent of the Fisk Drug store, which is on the southeast corner of Main Street Square is at the present time about $16,500 for a street floor considerably smaller than the complainant's.

A general examination of the figures presented would tend to show that the rents in the area in question range from between $1 and $2 to $15 per square foot, depending on the location and the size of the store. Also the fact that the complainant's store could be cut up into smaller stores and rented should be kept in mind, although, of course, as an offset to this contention is the fact that it is advantageous to have one tenant rather than several, and also the fact that numerous structural changes would have to be made.

After very careful consideration, keeping in mind the claims presented by both parties as to location, traffic and growth of business, the nature of the building itself, the different figures given by the real estate experts, and the demand for stores in Pawtucket, and using for the purposes of comparison the rentals obtained by other stores in the general neighborhood and in-so-far as possible of the same general size and type, the Court is of the opinion that a fair rental per annum for the premises in question for the period from November 1, 1925, to November 1, 1930, is $20,000.

If it be desired to figure this as a return of 10 per cent. of the valuation, it could be considered, it seems to the Court, that the building be estimated as worth approximately $60,000 and the balance for the land itself. Taking the rental as per square foot, the ground floor without considering the basement will figure approximately $3.31, the second floor at 75c. and the third floor, which is not very accessible and good only for storage, at 10c. per square foot.

The remaining question relates to the matter of the rent for the second 5-year period. Several of the witnesses produced testified that in their judg-

ment the rent should be the same for both the first and second 5 years; others believed that an increase extending up to 10 per cent. or more was proper. Of course the matter of fixing rent for several years in advance is for all parties concerned a matter of speculation. The testimony seems to show that at the present time the value of a dollar is more or less stabilized and that on the whole there is now an indication of a slight increase rather than a decrease in its value. On the other hand, taxes in Pawtucket are not particularly high and it is reasonable to suppose that within the next several years taxes might increase. The witnesses in general seem to believe that the cost of labor is not likely to increase materially in the next few years, but, on the other hand, it probably will not be lowered appreciably. The testimony shows clearly that in Pawtucket the general custom in leases of this kind is to provide for some increase in the coming years. In fact, the parties to this lease evidently contemplated that for the second 5 year period there should be some advance. An examination of the new rentings in Pawtucket since 1925 in practically all cases shows a substantial increase. The Court may refer specifically to the leases of the Fisk Drug store, Sarnoff-Irving Hat Store, Gibson's, Riley's, Easterbrook's and Gatchell's, all of which provide for substantial increases for several years.

Giving this testimony due consideration, the Court is of the opinion that a 5 per cent. increase for the period from November 1, 1930 to November 1, 1935 would be proper, which would make the rental for that period $21,000 per year.

The Court therefore finds that the fair rental value of the premises occupied by the complainant for the period from November 1, 1925 to November 1, 1930, is $20,000 per annum, and for the period from November 1, 1930, to November 1, 1935, is $21,000 per annum.

For complainant: John P. Beagan, Elmer E. Tufts, Edwards & Angell.

For respondent: Hinckley, Allen, Tillinghast & Phillips.